AVERY, J., did not sit on the hearing of this appeal.
A. T. Curtis was introduced as a witness in his own behalf, and testified as follows: "Had contract with John L. Martin, (418) treasurer of defendant, and resident manager of the company. He had the general management of the defendant's business in this State. He told me he was manager; Mr. Claywell so told me. He gave me the checks of the company on New York bank, and they were paid. In June, 1888, I delivered 24,000 feet of logs there. These logs were paid for. I delivered 90,000 feet of large logs at $12 per thousand, 40,000 feet of small logs at $10 per thousand, at Old Fort, N.C. according to contract with Martin. I complied with all instructions given me by Martin. These were reasonable prices for the logs. He was paying more than this for other logs of the same kind farther up the road. He ordered me to brand all logs with his brand, "P." I did so. They paid me $150 and $125 on these logs. Claywell said they were the finest logs he ever saw, and that the company would pay me soon. The large logs were hewn on two sides. They stayed on yard there from June till September. They were damaged very much. There were great cracks in the logs. They were soft yellow logs, liable to injury by exposure. Claywell said they would be shipped at once. This was in October. He did not ship the logs at once. Claywell was an agent of the defendant. I sawed the logs into lumber and sold it. I got $1,200 for the lumber. Had to move logs about a fourth of a mile. It cost $400 to saw and haul logs. The amount now due is $455. The market price for sawing is $3 per thousand. The hauling was done as cheaply as possible, so was the sawing. I handled lumber carefully, and sold it for a good price. I made all I could out of it. The first suit was brought 27 July, 1890. The plaintiff took nonsuit, and brought this action 10 August, 1892. The company never refused to receive the logs. I delivered them as directed, and branded them as directed. It was under this same contract I sold four car-loads to company (419) and that the company shipped them. I was paid $275 on the logs not shipped. Martin was there and saw logs a number of times. The logs were to be paid for at a certain price per thousand feet. Martin never measured logs, nor did Claywell. I measured the logs as I bought them from different parties. Neither Martin nor Claywell were present. I was paid for all the logs I shipped. All these logs were for shipment. It was arranged between Martin and me that I should measure. I sawed the logs into lumber in order to get my money out of them. I swore in the complaint in the first action that the company refused to receive the logs. They have never received them. I tried to get the company to take the logs. I notified the company if they did not take the logs in thirty days I'd take them. They did not do it, and I sawed the logs into lumber. They paid me the $275 on general account. The company *Page 308 
did not receive the logs. They did receive them by instructing me to brand the logs as I delivered them, which I did. I sawed up the logs because the company would not pay me for them. If they had accepted the logs I could not have had them sawed. They accepted the logs by not paying for them. The company did not take the logs. Martin said he would pay for the logs when he sold them. When I say the company did not receive or accept the logs I mean that they did not ship them."
Curtis recalled: "I measured the logs that were shipped."
A letter from John L. Martin to the plaintiff was introduced in evidence by the plaintiff, showing the payment of $100 on account of the logs delivered on the yard.
Here the plaintiff rested.
The defendant introduced no evidence.
It was admitted that the contract sued on was not in writing, and the defendant, at the time of the introduction of evidence in regard (420) thereto, objected to the same on ground that the same was not in writing, and was void under section 683 of The Code.
His Honor stated that he would charge the jury that, if they believed the evidence, the plaintiff was entitled to recover.
The defendant's counsel stated that, under this intimation, they did not desire to argue the case to the jury, and that they conceded that if the plaintiff was entitled to recover anything he was entitled to recover $455, with interest, but that, in their opinion, plaintiff was not entitled to recover any amount, and they asked his Honor to so charge.
The court charged the jury that, if they believed the evidence, the plaintiff was entitled to recover, and the defendant excepted to this charge.
Verdict and judgment for plaintiff, and appeal by defendant.
This is substantially the same action as that which was heard in this Court at September Term, 1891, Curtis v. Piedmont Co., 109 N.C. 401. It was then held that there was no evidence to go to the jury to prove a contract in writing, signed by defendant's officer, and hence the plea of the statute (section 683, requiring certain contracts of corporations to be in writing) should have been sustained. After the above decision the plaintiff submitted to a nonsuit in the Superior Court and brought the present action. The cause of action set out in this complaint is nearly identical with that in the former action.
The only question open, and which has not already been adjudicated, *Page 309 
is whether the contract declared upon is such a one as should have been in writing, under section 683 of The Code. (421)
When it was here before, the late Chief Justice Merrimon pointed out that the statute in question applies to executory contracts, and not to those in which defendants have availed themselves of property actually sold and delivered to them.
In the present action his Honor instructed the jury that if they believed the evidence, the plaintiff was entitled to recover. To this charge there was an exception, and we think there was error.
The testimony relied upon to prove that there was an executed contract, a sale and delivery, was that of the plaintiff himself, and was not clear upon this point.
If the plaintiff had testified to the sale and delivery of the logs, there being no testimony to the contrary, the instruction given by his Honor would have been undoubtedly correct. But, without meaning at all to reflect upon the plaintiff, his testimony still leaves it unsettled whether the contract was an executed one or not, and is not so direct as to warrant the instruction given.
New trial.
Cited: S. c., 114 N.C. 530.
(422)